**David BUNTZMAN, Plaintiff,**

v.

**SPRINGFIELD REDEVELOPMENT
AUTHORITY, INC., et al.,
Defendants.**

Civ. A. No. 89–30085–S.

United States District Court,
D. Massachusetts.

July 13, 1992.

Max Daniel Stern and Dennis Alan Shedd, Stern & Shapiro, Boston, Mass., for plaintiff.

Francis D. Dibble, Jr., Jerome Michael Scully, Bulkley, Richardson & Gelinas; Charles V. Ryan, Ryan, Martin, Costello, Allison & Leiter; William F. Howard, III; and John D. Ross, III, Springfield, Mass., for defendants.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

SKINNER, District Judge.

This action arises out of the Springfield Redevelopment Authority's allegedly wrongful taking of a parcel of real property owned by plaintiff David Buntzman. The history of discovery in this case is not a model of peaceful cooperation by the litigants. On May 23, 1991, I entered a scheduling order requiring plaintiff to furnish the defendants with an appraisal of the subject real property and with answers to expert interrogatories by November 1, 1991. My order concluded, "In view of the past history of this case, the failure of the plaintiff to meet any of the aforementioned deadlines shall result in dismissal of the action." Defendants now move to dismiss the action, citing plaintiff's alleged failure to meet the aforementioned deadlines.

Defendants state that on November 1, 1991, rather than furnish a complete appraisal of the property, the plaintiff "faxed" the defendants a two-page opinion letter by an appraiser stating a value for the property and promising that a full appraisal would be forthcoming. Plaintiff asserts that the facsimile transmission met the requirement of my May 23 order. On December 2, 1991 plaintiff produced a finished appraisal, which he characterizes as a supplement to the November 1 letter, and which defendants characterize as an appraisal which simply arrived a month late.

I believe that the defendants' characterization of the facts is correct. The November 1 letter states:

It is our intention to provide you with a final copy of our full appraisal report with all supporting data when the final draft of the report is completed.... We continue to gather additional information concerning comparable rental data and comparable sales data. Upon completion of this work, we will then be prepared to submit our final draft of the appraisal report.

On its face the letter indicates that a full appraisal report would be forthcoming only after additional information had been gathered, and the natural inference is that work on the appraisal was not complete at that time. The full appraisal report which was furnished in early December included the elements of an appraisal as the term is

commonly understood in the business: a summary of pertinent data, statements of limiting conditions and assumptions, and an opinion as to highest and best use of the property. None of these are included in the November 1 opinion letter. Plaintiff has expended great effort to show that the November 1 letter is a self-standing appraisal, but the plain meaning of the letter indicates that it is just a promise to complete an appraisal in the near future. That is not enough. The plaintiff was explicitly notified that strict compliance with the scheduling order would be enforced.

In addition to plaintiff's failure to provide an appraisal of the property on time, the plaintiff's answers to expert interrogatories, which were also faxed to the defendants on November 1, are woefully inadequate. In my May 23 order, I specifically required plaintiff to provide the environmental experts and engineers' answers, in addition to those of the appraiser, on or before November 1. The interrogatory and answer follows:

> 17Q. Please identify any and all expert witnesses you or your attorney expect to be present to testify at the trial of this matter. In your answer please: a. Identify the subject matter on which each expert is expected to testify; b. The substance of the facts and opinions to which each such expert is expected to testify; and c. A summary of the grounds for each such opinion.
>
> 17A. ...
> Robert Daylor
> Robert Ingram
> Robert Bouchard [addresses included]
> Mr. Daylor, Mr. Ingram, and/or Mr. Bouchard will testify based on their education, training, and experience as environmental scientists, and based on their investigation of the Union Station property that the cost for removal of asbestos, oil, and hazardous materials will be approximately $290–450 thousand.

The answer which plaintiff furnished includes no summary of grounds for the opinion expressed, and thus is an inadequate response to the interrogatory which I ordered the plaintiff to answer. For this reason and the untimely appraisal, the complaint is dismissed for plaintiff's failure to comply with my May 23, 1990 scheduling order.

Accordingly, the defendants' motion to dismiss is *allowed*. The clerk shall enter judgment in favor of defendants forthwith.